UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED EDUCATORS INSURANCE,

          Plaintiff,

vs.                                  Case No.:3:08-cv-99-J-16TEM

EVEREST INDEMNITY INSURANCE
COMPANY,

          Defendant.
_____/

## ORDER

United Educators Insurance ("United Educators") asserts an equitable subrogation claim on behalf of its insured Edward Waters College (the "College") against Everest Indemnity Insurance Company ("Everest") to recover from Everest the $375,000.00 United Educators paid to settle an underlying wrongful death claim (Dkt. 1). The two insurance providers disagree about the proper allocation of the settlement payment among the relevant insurance policies. The court denied Everest's initial motion to dismiss (Dkt. 13) because the parties failed to attach the operative insurance policies pertinent to the complaint and required for the court to consider Everest's motion to dismiss. Pursuant to the order denying Everest's initial motion to dismiss (Dkt. 22), the parties jointly submitted the operative insurances polices pertinent to this matter (Dkt. 23). Everest renews its motion to dismiss (Dkt. 24) and argues that United Educators cannot state a claim for equitable subrogation. United Educators opposes the motion (Dkt. 25).

Subsequent to the filing of the Motion to Dismiss and the response thereto, the parties filed a Joint Stipulation (Dkt 40) in which they agree that the only remaining issue for resolution is the

1

legal question of the proper allocation of the settlement among the insurance policies at issue. That being the case, the parties agree to have their Motion to Dismiss and the response treated as cross motions for summary judgment. The Court will proceed as such.

**I.      Background**

Following the murder of a student on the College's campus, the student's estate (the "underlying claimant") asserted a wrongful death claim against the College and Alrod Security Services ("Alrod Security"), the security services provider that the College hired to provide security guard services on the College's campus. The underlying claimant agreed to settle the claim for $2,750,000.00. This insurance coverage dispute concerns the appropriate allocation of the settlement among four insurance policies covering the College and Alrod Security.

Pursuant to the Security Guard Services Agreement (the "security agreement") between the College and Alrod Security, the College agreed to indemnify Alrod Security and Alrod Security agreed to name the College as an additional insured under its "comprehensive general liability policy." Neither party argues that indemnification is at issue in this dispute. In accord with the agreement, Alrod Security added the College as an additional insured on its commercial general liability policy (the "Alrod Security primary policy"), which was issued by Everett and provides coverage up to $1,000,000.00 per occurrence. Everest also issued to Alrod Security a commercial catastrophic liability policy (the "Alrod Security excess policy"), which also includes the College as an additional insured and provides excess coverage up to $4,000,000.00 per occurrence.

Everest concedes that the College is an additional insured under the Alrod Security primary policy and the Alrod Security excess policy. In addition, Everest insured the College under a commercial general liability policy (the "College primary policy"), which provides coverage up to

2

$1,000,000.00 per occurrence. Finally, United Educators issued the College an excess liability policy (the "College excess policy"), which provides excess coverage up to $5,000,000.00 per occurrence.

To fund the settlement with the underlying claimant, Everest contributed $1,000,000.00 pursuant to the Alrod Security primary policy, $1,000,000.00 pursuant to the College primary policy, and $375,000.00 pursuant to the Alrod Security excess policy. United Educators contributed $375,000.00 pursuant to the College excess policy. However, United Educators argues that it reserved the right to seek reallocation of the settlement amount paid from the College excess policy.

United Educators alleges that the entire settlement "fell within coverage of all three Everest policies" and that Everest "deliberately and willfully failed in its duties as an insurer to settle the underlying action on behalf of the college." United Educators further alleges that because Everest failed to pay the total amount of the settlement pursuant to its policies, United Educators was forced to protect its insured by contributing $375,000.00 to the settlement under the College excess policy even though allocation of the settlement never implicated the College excess policy. United Educators asserts that pursuant to a claim of equitable subrogation it is entitled to recover from Everest the amount that United Educators contributed to the settlement.

Everest's motion to dismiss argues that United Educators fails to state a claim for equitable subrogation because United Educators was responsible for a pro rata share of the settlement amount remaining after Everest paid the $2,000,000.00 available under the Alrod Security primary policy and the College primary policy. Everest argues that the Alrod Security primary policy and the College primary policy insure at the same level and properly paid $1,000,000.00 each to the overall settlement. Further, Everest argues that, because the Alrod Security excess policy and the College

3

excess policy each contain mutually repugnant "other insurance" provisions, each excess policy should contribute a pro rata share of the amount remaining after the two primary policies were paid in full, or $375,000.00 each.

United Educators opposes the motion and argues that Everest improperly allocated the primary policies to the detriment of the College. United Educators argues that because the College was insured under both the Alrod Security primary policy and the College primary policy, Everest should have paid the $1,375,000.00 owed by the College from the College's appropriate share of the Alrod Security primary policy and then from the College primary policy. United Educators also argues that the Alrod Security primary policy is primary over the College primary policy. Under both arguments, United Educators argues that Everest should have paid $500,000.00 on behalf of each insured under the Alrod Security primary policy and should have funded the remaining amount of $875,000.00 owed by the College from the College primary policy. According to United Educators' argument, the appropriate allocation of the settlement never implicates the College excess policy. United Educators further argues that the court may consider the relevant insurance policies and issue a judgment on the issue of appropriate allocation of the settlement.

## II.    Discussion

This dispute concerns the appropriate priority of insurance coverage under the four relevant insurance policies that contributed to the settlement. The parties agree that each policy provides coverage for the settlement but disagree about the appropriate allocation of the settlement among the policies. Determination of priority of insurance coverage requires review of the relevant policy language. American States Ins. Co. v. Barolette, 566 So.2d 314, 315 (Fla. Dist. Ct. App. 1990); Sentry Ins. Co. v. Aetna Ins. Co., 450 So.2d 1233, 1236 (Fla. Dist. Ct. App. 1984) (noting that where

4

more than one policy provides coverage, it is appropriate to review the contract provisions to determine the priority of coverage).

For the purposes of this motion to dismiss, the court properly considers the language of the four pertinent policies even though the documents were not attached to the complaint because the policies are central to United Educator's claim and Everest has properly introduced the documents to attack the sufficiency of the complaint. See e.g. 5A Charles A. Wright & Arther R. Miller, Federal Practice & Procedure Civil 3d § 1327 (2004) ("when the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case"). Of note, because both the College primary policy and the Alrod Security primary policy were issued and drafted by Everest, the language will be construed against Everest and in favor of the College. Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla. 2002) ("Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy").

Everest concedes that the College is an additional insured under the Alrod Security primary policy and pursuant to the security agreement between Alrod Security and the College. Accordingly, Alrod Security and the College are insured equally under the Alrod Security primary policy. The College primary policy covers the College only. The College primary policy and the Alrod Security primary policy each state that the policy is a primary policy except that each policy is excess over "any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by

attachment of an endorsement." Everest does not dispute that the language in this provision applied to the College with regard to the Alrod Security primary policy. Instead, Everest argues that, notwithstanding the provision, both policies are equally primary and pay coverage on the same level. However, the language of the policy demonstrates that Everest's argument is without merit.

Under the circumstances created by the security agreement and the College's additional insured status under the Alrod Security primary policy, the "other insurance" provision of the College primary policy applies. Because nothing triggers the Alrod Security primary policy's "other insurance" provision, the Alrod Security primary policy remains primary. Accordingly, pursuant to the plain language of the College's primary policy drafted by Everest, the College primary policy is excess over the Alrod Security primary policy. Accordingly, the Alrod Security primary policy should provide the first level of payment on the settlement. The policy limit of $1,000,000.00 paid on behalf of both Alrod Security and the College results in the remaining settlement amount of $1,750,000.00 owed equally by both Alrod Security and the College.

On behalf of the College, the next policy to trigger is the College primary policy, which should pay the remaining $875,000.00 owed by the College. Contrary to United Educators argument, the Alrod Security excess policy does not trigger until the College primary policy has reached its limit. The plain language of the Alrod Security excess policy, which covers Alrod Security and the College, states that the policy is "excess over . . . any other insurance" and that the policy will pay any amount in excess of "the total amount that all such other insurance would pay for loss in the absence of this insurance." Because the College primary policy is primary over the Alrod Security excess policy, the College primary policy should pay the second level of insurance coverage owed by the College. On behalf of Alrod Security, the Alrod Security excess policy

6

should pay the remaining $875,000.00 owed by Alrod Security. Accordingly, the settlement never triggered the College excess policy and no review of the terms of the College excess policy is required.

**III. Conclusion**

Accordingly, Everest's motion to dismiss (Dkt. 24) is **DENIED** and, on the issue of priority of insurance coverage, the court finds in favor of United Educators.

Based on the parties' agreement that the motion and response should be treated a cross motions for summary judgment, the Clerk is directed to enter judgment for United Educators and against Everest Indemnity. The Clerk is directed to close the case.

**DONE and ORDERED** from Chambers in Jacksonville on this 27th day of January 2009.

_____
JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record